## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

DUANE BUCK and ANN BUCK, on     Civil No. 17-13278 (NLH/KMW)
behalf of themselves and all
others similarly situated,        **OPINION**

        Plaintiffs,

    v.

AMERICAN GENERAL LIFE
INSURANCE COMPANY,

        Defendant.

---

**<u>APPEARANCES</u>:**

MARTIN P SCHRAMA
CRAIG S. HILLARD
STEFANIE COLELLA-WALSH
STARK & STARK
993 LENOX DRIVE
BUILDING TWO
LAWRENCEVILLE, NJ 08648

SCOTT P. GORMAN
GORMAN & GORMAN, LLC
LIBERTY VIEW, SUITE 400
457 HADDONFIELD ROAD
CHERRY HILL, NJ 08002

    *Attorneys for Plaintiffs Duane and Ann Buck*

ANDREW P. FISHKIN
ZACHARY W. SILVERMAN
S. AARON LOTERSTEIN
FISHKIN LUCKS LLP
THE LEGAL CENTER
ONE RIVERFRONT PLAZA, SUITE 410
NEWARK, NJ 07102

    *Attorneys for Defendant American General Life Insurance Company*

**HILLMAN, District Judge**

This case is a putative class action alleging the breach of a universal life insurance policy.  Presently before the Court is Defendant American General Life Insurance's Motion to Dismiss Plaintiffs' First Amended Complaint and Motion to Strike Class Allegations.  For the reasons expressed herein, Defendant's Motion to Dismiss will be denied, in part, and granted, in part.  Defendant's Motion to Strike Class Allegations will be denied without prejudice.

## BACKGROUND

We take our brief recitation of the facts from Plaintiffs' first amended complaint.  In 1984, Plaintiffs Duane and Ann Buck (collectively, "Plaintiffs") purchased a universal life insurance policy (the "Policy") on the life of Duane Buck with his wife, Ann Buck, as an additional insured.  The Policy was issued by The Old Line Life Insurance Company of America, a company later acquired by Defendant American General Life Insurance Company ("Defendant" or "AGLIC").

Before discussing the specifics of the Policy and the dispute which later arose under it, it is important to establish the basic principles of a universal life insurance policy. Universal life insurance is a form of permanent life insurance, also known as flexible premium or adjustable life insurance.

This refers to the fact that a policy is for a term of years with a set periodic premium, but the premium, benefits, and beneficiaries may all be modified during the term of years.

This type of insurance is meant to give a policyholder coverage for her entire lifetime, while allowing her to vary premium payments, adjust death benefits, and build a cash value while young to offset the higher premiums charged later in life. In other words, as Plaintiffs explain, this type of policy has three elements: (1) the premium, payable periodically, (2) the death benefit, payable to the beneficiary upon death of the insured, and (3) the cash surrender value, the value the policyholder receives if the policy is surrendered prior to death. The cash value built up in the policy receives preferred tax treatment and may be used to pay the cost of insurance in place of a premium, to borrow money against the policy, or merely saved to build cash value.

These types of policies are governed, in part, by the Internal Revenue Code. This provides an outer limit for the amount of cash value that may accrue within a policy while still qualifying for preferred tax treatment. See I.R.C. § 7702, et seq. If the cash value exceeds this outer limit, a policy may lose preferred tax treatment as "life insurance." Besides this penalty, it is unclear from the parties briefing whether there are any other consequences to the owner or insurer. Both

parties note that the actual calculations to determine the premium amount to pay to keep this preferred tax treatment and build cash value are too complicated to explain and, in any event, those calculations are irrelevant to this case.

Initially, the Policy provided a $70,000 death benefit for Duane Buck, a $25,000 rider for Ann Buck, and three $5,000 riders, one for each of the couple's children. The Policy guaranteed an interest rate of 4.5%, compounded yearly, for all premiums paid in excess of cost. The Policy also granted Plaintiffs the right to effectuate a partial or total surrender of the Policy at certain points with certain predetermined fees. AGLIC also provided "Annual Reports" which show the policy's current death benefit, current cash value, total amount of premiums paid, total accumulated growth, and total charges assessed. As the name suggests, the Policy promised that these Annual Reports would be sent – at least - on a yearly basis.

At some point thereafter, Plaintiffs increased Duane Buck's death benefit to $100,000 and Ann Buck's death benefit to $50,000. In 2008, Plaintiffs requested that AGLIC reduce the death benefit for both Duane and Ann Buck to $25,000 and that it eliminate the $15,000 in riders the couple had maintained for their children. AGLIC complied.

In connection with the 2008 decrease in death benefit, AGLIC provided the Bucks with a "Supplemental Illustration" (the

"Illustration") dated September 29, 2008.  The Illustration
provides policyholders with projections to help them decide how
desired changes to their policy may affect the ability of their
investment to grow while maintaining preferred tax status.[1]
Plaintiffs allege the Illustrations provided by AGLIC determined
the amount of yearly or monthly premiums they paid.  The Bucks
paid the premium as described in the Illustration.

On January 7, 2016, AGLIC sent Plaintiffs a letter which
claimed the Policy had been funded to its limit and was at risk
of losing its preferred tax status.  Plaintiffs allege that the
reason the Policy was at risk of losing its preferred tax status
was because Defendant used faulty compliance procedures and
software which failed to adequately predict the amount of
premiums required to keep the Policy tax compliant throughout
its life.  Defendant, in this letter, claimed that it was a
combination of the decrease in death benefits and premium amount
which led to this compliance issue.

AGLIC presented the Bucks with three options that would
allow the Policy to maintain its tax status: (1) increasing the
death benefit (which would have required additional
underwriting), (2) surrendering the Policy, or (3) maintaining

---

[1] According to AGLIC, the Illustration is (1) not a part of the
policy, (2) did not purport to provide tax advice, and (3) did
not address whether or how tax regulations could affect premium
payments.  This will be addressed in more detail infra.

the Policy, allowing annual refunds, and ceasing premium
payments until the cash value of the Policy was exhausted.
AGLIC, in the letter, reserved the right to completely surrender
the Policy if Plaintiffs did not choose one of the three listed
options.

Plaintiffs chose none of these options.  Each option
presented Plaintiffs with either a loss of the Policy, increased
premiums, or loss of the benefit of the 4.5% interest rate being
applied to their future premium payments (as they would be
prohibited from making any further premium payments until a
later date).  AGLIC continued to send letters over the following
year, reiterating the options available and that it reserved the
right to unilaterally surrender the policy if no option was
chosen.

On January 13, 2017, AGLIC sent a letter stating (1) the
Policy remained non-compliant, (2) a check would be sent in the
amount of $3,260 representing the amount the Policy was
overfunded, and (3) the cash value of the Policy would be used
to pay premiums until it had been exhausted, at which time
Plaintiffs could resume paying premiums.

Finally, on December 11, 2017 AGLIC sent a letter stating
Plaintiffs "may pay enough into the policy each year as
necessary to maintain . . . coverage without building up any
excess policy value."  Plaintiffs allege this prohibits them

from gaining the benefit of the 4.5% interest rate and building any cash value within the Policy.  In effect, Plaintiffs allege, the Policy has been transformed into a year-to-year term policy.

On December 19, 2017 Plaintiffs filed a complaint in this Court, which included class action allegations.  Plaintiffs present two claims for relief: breach of contract and rescission.  Defendant filed its Motion to Dismiss and Motion to Strike Class Allegations on March 5, 2018.  It has been fully briefed and is ripe for adjudication.

## DISCUSSION

### A.    Subject Matter Jurisdiction

This Court has jurisdiction over this action under the Class Action Fairness Act of 2005.  See 28 U.S.C. § 1332(d) (granting United States district courts jurisdiction over putative class claims, which, in aggregate, exceed $5,000,000 and include one putative class member who is diverse from defendants).  Plaintiffs are individual citizens of New Jersey and AGLIC is a citizen of Texas having been incorporated there and maintaining its principal place of business in that state.

As for amount in controversy, the First Amended Class Action Complaint is unfortunately vague and internally inconsistent - or at least redundant.  First, while it alleges AGLIC has approximately 100,000 individual life insurance policies in force in New Jersey, it fails to distinguish between

universal life policies – at issue here – and other forms of
life insurance.  Second, in one sentence the First Amended Class
Action Complaint alleges AGLIC received "over $100 million in
premiums annually" and then in the next sentence alleges AGLIC
received over $600 million in premiums "in 2016 alone" both
numbers attributed to its New Jersey life insurance customers.
[Doc. No. 8 at para. 6.]

Despite the lack of clarity and specificity, it seems
plausible at this stage of the proceedings that a large enough
percentage of AGLIC life insurance customers are universal life
customers and given the large dollar volume of premiums for all
life insurance policies in force – whichever alleged number is
more accurate – that the putative class damages exceed the
statutory minimum.

**B.     Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for
failure to state a claim upon which relief can be granted
pursuant to Federal Rule of Civil Procedure 12(b)(6), a court
must accept all well-pleaded allegations in the complaint as
true and view them in the light most favorable to the plaintiff.
Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well
settled that a pleading is sufficient if it contains "a short
and plain statement of the claim showing that the pleader is
entitled to relief."  FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, a

plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a

cause of action will not do . . . ." Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007) (alteration in original)

(citations omitted) (first citing Conley v. Gibson, 355 U.S. 41,

47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.,

40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v.

Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a
> court must take three steps.  First, the court must
> "tak[e] note of the elements a plaintiff must plead to
> state a claim."  Second, the court should identify
> allegations that, "because they are no more than
> conclusions, are not entitled to the assumption of
> truth."  Third, "whe[n] there are well-pleaded factual
> allegations, a court should assume their veracity and
> then determine whether they plausibly give rise to an
> entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations

in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556

U.S. 662, 664, 675, 679 (2009)).  A court may "generally

consider only the allegations contained in the complaint,

exhibits attached to the complaint and matters of public

record."  Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014)

(citing <u>Pension Benefit Guar. Corp. v. White Consol. Indus.,</u> <u>Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." <u>Twombly</u>, 550 U.S. at 563 n.8 (quoting <u>Scheuer v. Rhoades</u>, 416 U.S. 232, 236 (1974)); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 684 ("Our decision in <u>Twombly</u> expounded the pleading standard for 'all civil actions' . . . ."); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009) ("<u>Iqbal</u> . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before <u>Twombly</u>."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" <u>Malleus</u>, 641 F.3d at 563 (quoting <u>Twombly</u>, 550 U.S. at 570).

### C. Motion to Dismiss

Defendant moves to dismiss the breach of contract and rescission claims pleaded in the amended complaint. Defendant generally argues that the breaches complained of are not breaches of any contractual terms.[2] First, Defendant asserts

---

[2] Although Defendant makes this all-encompassing claim, it does not work through Plaintiffs' complaint showing how each and every breach complained of is not based on a provision within the Policy. Accordingly, this Court will only consider the

there is no breach because the Illustration complained of was not a part of the contract and cannot be the basis for a breach claim.  Second, Defendant asserts there is no breach because Defendant did not unilaterally effectuate a surrender, it merely refunded excess premiums.  The proof, Defendant asserts, is the fact that the death benefit was not reduced correspondingly.  Third, Defendant argues there can be no rescission claim in the absence of a substantive breach of contract claim.  Thus, if the breach of contract claim is dismissed the rescission claim must be dismissed as well.[3]

Plaintiffs counter with a few arguments.  First, Plaintiffs assert that a breach of either the Annual Reports or the Illustration requirement is a breach of the Policy.  Second, Plaintiffs argue the alleged surrender constituted a breach, because whether it is labeled a surrender or refund, Defendant had no right to issue it.  Plaintiffs assert that even if the so-called surrender was a premium refund, Defendant had no right to unilaterally effectuate the refund.  Third, Plaintiffs assert it is a breach of contract for an insurance company to refuse to

_____

specific arguments made by Defendant in its motion and will not engage in a wholesale search of the complaint and Policy.

[3] This Court will not address Defendant's argument concerning misrepresentation and negligent misrepresentation.  Claims for either have not been brought by Plaintiffs, so those arguments are irrelevant at this time.

accept a premium.

In order to properly plead a breach of contract claim, Plaintiffs must show "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." Motamed v. Chubb Corp., 15-cv-7262, 2016 U.S. Dist. LEXIS 33301, at *11-12 (D.N.J. Mar. 15, 2016) (citing Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc., 737 F.3d 879, 900 (3d Cir. 2013)). Defendant does not dispute that a valid contract exists or that, in the event a breach has been sufficiently pleaded, there is a causal relationship between the breach and the damages. The Court will deem these admitted solely for purposes of the present analysis.

   a. Illustrations and Annual Report

First, Defendant argues the Illustrations and Annual Reports provided by AGLIC are not a part of the contract and therefore cannot serve as the basis for a breach of contract claim. Defendant cites the Policy's language, which states "THE CONTRACT" consists of the "[P]olicy, including any riders and endorsements, the original application and any supplemental applications." Because the Annual Reports and Illustrations are not listed as a part of "THE CONTRACT," Defendant argues, they cannot be the basis for the breach.

Defendant misunderstands Plaintiffs' theory of breach here.
It is not that either the Annual Report or Illustration are a
part of the Policy, it is that the Policy makes specific
promises regarding these two items.  Defendant sums this up
succinctly in its reply brief, stating that the Policy "required
only that AGLIC provide annual reports and requested
illustrations containing certain required information . . . ."
While Plaintiffs do not argue, in their complaint or brief in
opposition, that AGLIC failed to provide these documents, they
do argue that misrepresentations or omissions in either could
give rise to a breach.  In essence, the Annual Reports or the
Illustration received by Plaintiffs did not contain the required
information.  This Court examines the Policy provision for each
document in turn.

Under the heading "ANNUAL REPORT" the Policy states that
AGLIC "will send a report to the owner at least once each year"
which contains information on the "policy's current specified
amount, cash value and debt, partial surrenders, premiums paid
and charges made since the last report, and any other data
required by the state in which this policy is delivered."  AGLIC
is correct that this does not incorporate the Annual Reports
into the Policy, but it does create an obligation under which
AGLIC must provide a report with the specified information
yearly.

A breach of this provision could occur under two sets of
circumstances.  First, if the Annual Report is not sent or sent
without the information promised, then AGLIC could have breached
the Policy.  This is not alleged to be the case here.  Second,
if the Annual Report is sent containing misrepresentations or
omissions as to the information the Policy promises it would
include, then that may also amount to a breach.  This is what is
alleged here in Plaintiffs' complaint.  Defendant has not
presented to this Court any case law which would require this
Court to dismiss this theory of breach (or the similar theory
discussed immediately below).[4]  While the Court does not decide
at this stage whether this does constitute a breach, drawing all
reasonable inferences in favor of Plaintiffs, this Court finds
Plaintiffs may move forward with a theory of breach on the basis
of the Annual Report.

---

[4] Defendant does argue that Plaintiffs "fail to explain (likely
because the argument is untenable) how any alleged inaccuracies
in the annual reports and requested illustrations could give
rise to a breach of contract claim.  Neither type of document
contains promises capable of being breached."  This does not
persuade this Court that these theories of breach must be
dismissed, as it misstates both the burden and the theory of
breach.  While there may be case law stating an inaccuracy in a
document that one party was contractually obligated to produce
to another cannot serve as the basis for a breach claim,
Defendant has not brought that case law before this Court.
Moreover, Defendant misstates Plaintiffs' argument.  It is not
that the Annual Report or Illustration contains a promise
capable of being breached, it is that they allegedly contain
misrepresentations or omissions, which is a breach of the
alleged promise contained in the Policy.

Under the heading of "ILLUSTRATION OF FUTURE BENEFITS AND VALUES," the Policy states:

> Upon the owner's written request and payment of the service fee then in effect, we will provide an illustration of future death benefits and cash values. The illustration will be based on necessary assumptions specified by us and/or the owner. This includes assumptions as to specified amount, coverage options and future premium payments.

For the purposes of this analysis, the Court considers this a conditional promise, dependent upon whether AGLIC receives (1) a written request and (2) payment of the service fee. It appears there is no dispute that Plaintiffs satisfied the conditions precedent and that Defendant sent the Illustration.

The same two possibilities for breach exist as were explained with the Annual Reports. Again, while the Court does not decide at this stage whether this does, in fact, constitute a breach, drawing all reasonable inferences in favor of Plaintiffs, this Court finds Plaintiffs may move forward with a theory of breach of contract on the basis of the Illustration. Thus, this Court will deny Defendant's Motion to Dismiss on this theory of breach.[5]

### b. AGLIC's Unilateral Partial Surrender

Defendant asserts that it had the right under the Policy to

---

[5] Plaintiffs do not contend that the changes made to the Policy in 2008 constitute a modification that would somehow add the Annual Reports or Illustration into the Policy, so this ancillary argument by Defendant is irrelevant.

unilaterally return excess premiums to Plaintiffs.  At this
early stage in the proceedings, we must make all reasonable
inferences in favor of Plaintiffs.  Plaintiffs have presented
two, reasonable explanations for the contractual underpinning of
the $3,260 check sent by AGLIC to Plaintiffs.  Plaintiffs argue
it was either a premium refund or a partial surrender.  Under
either definition, Plaintiffs contend, the return of funds was a
breach as AGLIC was without power to effectuate it.

Under one view, in AGLIC's own words from its January 13,
2017 letter, this check was "a refund of the amount overfunded."
This is further evidenced by the check itself, which noted the
payment was a "DEFRA violation refund."  If this was in fact a
refund, then there has been no breach by Defendant.  Under the
clear terms of the Policy, AGLIC reserved the right to "refund
any part of a premium that exceeds the premium guidelines
applicable to this policy under the Internal Revenue Code of
1954."  Neither party disputes that this Policy was non-
compliant and Plaintiffs do not allege that the $3,260 returned
to them was done so for any other reason than to keep the Policy
compliant.

But, AGLIC's many letters create ambiguity.  In AGLIC's
first letter on January 7, 2016, it states if Plaintiffs choose
none of the three options, AGLIC "reserve[s] the right to
exercise the automatic option, i.e. surrender the policy . . .

." As Plaintiffs never responded to the Defendant's January 7, 2016 letter, the Court must infer at this stage that AGLIC exercised "the automatic option." This is further evidenced by AGLIC's January 17, 2017 letter enclosing what it described as a "partial surrender check." In that letter, AGLIC stated it had "completed [Plaintiffs] request for a partial surrender" of the Policy.

According to the contract "[t]he owner may, by written request, make a partial surrender of this policy. The partial surrender may take effect on any monthly date while the insured is alive and before the maturity date." This is the only portion of the contract that concerns partial surrender.

Defendant asserts this language allows it to effectuate a unilateral partial surrender. But, this language is silent as to whether Defendant may effectuate, unilaterally, a partial surrender of the Policy. The Court cannot rewrite the Policy and Defendant has presented no law that would read this right into the Policy where it has not been explicitly granted.

Defendant also argues there is circumstantial evidence showing this was not a partial surrender of the Policy. Defendant states whenever a partial surrender occurs, the death benefit must also be correspondingly reduced. Since there was no reduction in death benefit, this could not be a partial surrender. The Policy does not state exactly what Defendant

argues.  Instead, the Policy states: "After any partial
surrender the specified amount may not be less than $25,000
unless a lower amount is specified by our then current company
rules."  This raises the reasonable possibility that a partial
surrender could have occurred without a corresponding reduction
in death benefit.  At this early stage, the Court must draw this
reasonable inference in favor of Plaintiffs.  Therefore,
Plaintiffs may not continue to pursue a breach of contract claim
under the "refund" theory, but may do so under the "partial
surrender" theory.

### c. Refusal to Accept Planned Premiums

Defendant argues it did not breach the Policy, as a matter
of law, because it refused to accept premium payments from
Plaintiffs.  Defendant essentially asserts that there is no part
of the Policy that requires it to accept premiums in this
manner.  Plaintiffs argue they were obligated to pay the monthly
premium and Defendant was obligated to accept it, both under the
Policy and as a matter of law.

Before turning to the law, this Court must first determine
whether there is a Policy provision requiring the payment of a
premium.  One factor complicates the analysis.  Because the
Policy is a universal life policy, it allows the Plaintiff to
pay the cost of insurance through the cash value of the Policy
as well as through monthly premiums – or any combination

thereof.  In practice, that means Plaintiffs need not pay a premium as long as there is enough cash value in the Policy to cover the cost of insurance.  Unlike most insurance policies, the payment of a premium is not a condition of insurance – only coverage of the cost of insurance is a condition of maintaining coverage.

The ability to pay the cost of insurance in this manner is implicit, rather than explicit in the contract.  Under the section entitled "CONTINUATION OF INSURANCE," the Policy states "[i]f premium payments cease, insurance under this policy and benefits under any rider will continue as provided, subject to the Grace Period provision."  The "Grace Period" is a 61-day period that starts on "a monthly date on which the surrender value is not large enough to cover the next monthly deduction." Combining the two sections, it is implied that the Policy will continue as long as the surrender value is greater than the next monthly deduction even in the absence of premium payments.  In other words, it appears that payment of a monthly premium is not a condition of insurance, just the existence of cash value in excess of the cost of insurance.

Plaintiffs, therefore, are not arguing there was a breach of the Policy because the Policy was cancelled even though they paid the premium requested.  The Policy is still in effect.  The argument is more nuanced.  Specifically, Plaintiffs argue that

19

Defendant is obligated to accept a premium paid directly from
Plaintiffs – regardless of whether the premium is needed to
cover the cost of insurance or whether the premium may rob the
Policy of its preferred tax status.

As discussed above, "THE CONTRACT" includes the Policy and
"any riders and endorsements, the original application, and any
supplemental applications . . . ." And, the Policy, through an
endorsement, does state the Plaintiffs would pay "$ 124.00"
"monthly" in a "Planned Premium." Because of the unique nature
of a universal life policy (discussed supra), however, a premium
payment is not a condition of insurance – just a surrender value
that is in excess of the cost of insurance.

Neither is there an explicit provision of the Policy that
this Court can find – or that the parties have pointed out –
that states the Defendant is obligated to accept the premium.
But, this is not dispositive of the issue. In a contract for
provision of goods, there is no provision stating the buyer must
accept conforming goods from the seller. It is implied and may
be so implied here. See, e.g., Michaelsen v. Sec. Mut. Life
Ins. Co., 154 F. 356, 356-57 (3d Cir. 1907) ("[T]he obligation
of the insured to pay yearly premiums on his policy implies a
corresponding obligation on the insurer to receive such premiums
yearly, so long as the policy remains in force . . . and an
unjust refusal to accept such premiums constitutes a breach of

contract.").

At this stage, this Court does not decide this issue, but it cannot dismiss this theory of breach as a matter of law. While Defendant is correct that Plaintiffs' case law does not address the special case of the universal life insurance policy, it has not brought forth any case law, assuming the facts in Plaintiffs' case as true, that require dismissal. This Court will allow the Plaintiffs to proceed under this theory of breach.

### d. Rescission

Defendant's argument for dismissing Plaintiffs' rescission claim depends exclusively on its argument for dismissing Plaintiffs' breach of contract claim. In other words, the rescission claim can be dismissed only if no breach of contract claim survives Defendant's Motion to Dismiss. Because this Court will not dismiss the breach of contract claim, it will not dismiss the rescission claim.

### D. Standard for Motion to Strike Class Allegations

Defendant also moves to strike Plaintiffs' class allegations from the complaint under Federal Rules of Civil Procedure 12(f), 23(c)(1)(A), and 23(d)(1)(D). Plaintiffs resist Defendant's motion, arguing a decision on class allegations is premature and unwarranted.

This Court recognizes, as Defendant has ably argued, that

"[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." FED. R. CIV. P. 23(c)(1)(A). But, "[a]s a practical matter, the court's [decision] usually should be predicated on more information than the complaint itself affords . . . [and] courts frequently have ruled that discovery relating to the issue whether a class action is appropriate needs to be undertaken before deciding whether to allow the action to proceed on a class basis." Oravsky v. Encompass Ins. Co., 804 F. Supp. 2d 228, 240-41 (D.N.J. 2011) (citing 5C Wright, Miller & Kane, Federal Practice & Procedure Civil 3d § 1785.3 (explaining that the practice employed in the overwhelming majority of class actions is to resolve class certification only after an appropriate period of discovery)).

Thus, "dismissal of class certification allegations should be ordered only 'in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.'" S. Broward Hosp. Dist. v. MedQuist, Inc., 516 F. Supp. 2d 370, 401 (D.N.J. 2007) (quoting Clark v. McDonald's Corp., 213 F.R.D. 198, 205 n.3 (D.N.J. 2003)). This Court also notes that "the better course is to deny [a motion to strike class allegations] because 'the shape and form of a class action evolves only through the process of

discovery.'" Id. at 401-02 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

**E. Motion to Strike Class Allegations**

Defendant argues on two grounds that this Court should strike all nationwide class allegations. Defendant does not dispute that Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23(a) in their complaint, but instead focus on: (1) whether Plaintiffs have satisfied the predominance requirement of 23(b)(3) and (2) whether the putative class action presents manageability issues which may make collective adjudication unwise and impracticable.

Plaintiffs argue that a decision on the class allegations is premature as no discovery has yet been completed. In addition, Plaintiffs assert that they may pursue certification under 23(b)(2), instead of 23(b)(3). This could moot Defendant's argument concerning predominance and superiority. Finally, Plaintiffs distinguish many of the cases cited by Defendant from the present situation.

First, this Court will address Defendant's predominance argument. Predominance is only shown where "questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). Defendant asserts the putative class is comprised of individuals who received an illustration or annual report detailing the

premium payments to be made and a letter like one Plaintiffs received, which they assert was a form letter. To sustain the breach of contract claim, Defendant asserts, Plaintiffs must show this Court that these class members relied on an illustration or annual report in making premium payments, were issued a letter like the one Plaintiffs received as a result of their reliance, and AGLIC no longer accepted their premium payments. Defendant argues there can be no predominance here because individual inquiry is required into whether each owner of a universal life insurance policy actually relied upon the illustration and annual report in making premium payments.

Defendant's argument misses the mark. Plaintiffs do not bring a case alleging liability for fraudulent misrepresentation (or another similar cause of action). Instead, Plaintiffs bring a breach of contract claim. Reliance is not a required element of breach of contract. Plaintiffs may only have to prove there were omissions or misrepresentations in the annual reports or illustrations. This could be proven by showing the software program that calculated permissible premium amounts was somehow incorrectly programmed. This, obviously, would not require individualized proof and could be a fact common to all class members. Whether or not Plaintiffs pursue this theory or another seems to be entirely dependent on the discovery which they receive.

It is not this Court's place to predict what evidence may be found and which theory (or theories) Plaintiffs may pursue. This is exactly why motions to strike class allegations filed prior to discovery are disfavored. This Court refuses to rest its opinion on the conjecture and assumptions presented by Defendant. Accordingly, this Court will deny Defendant's Motion to Strike Class Allegations, without prejudice, on predominance grounds.

Second, this Court will address Defendant's manageability argument. Manageability refers to the Federal Rule of Civil Procedure 23(b)(3) superiority requirement, which states that "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." Defendant argues this case does not meet the manageability requirement because it is a putative nationwide class action asserting claims that arise under each state's common law. Defendants assert that statutes of limitations, claim accrual, and parol evidence likely all differ state-to-state and would require this Court to apply fifty different standards.

Defendant's argument is well-taken. This case could present many different standards. It also may not, considering Plaintiffs' assertion that almost every state follows fairly standard elements for a breach of contract claim. Regardless of what may happen, the fact that it only _may_ happen shows these

arguments are premature.  This Court cannot decide whether to allow class allegations to move forward on the basis of Defendant's conjecture of what may arise.  Accordingly, this Court will deny Defendant's Motion to Strike Class Allegations, without prejudice, on manageability grounds.

To be sure, Defendant has presented arguments that may well prove persuasive.  This Court does not yet decide whether those arguments are meritorious.  Thus, while Defendant's Motion to Strike Class Allegations will be denied, it will be denied without prejudice.  Defendant is free to raise these same grounds in later filings, whether it be another motion to strike or in response to Plaintiffs' motion for class certification.

**F. Leave to Amend**

Plaintiffs request in their brief in opposition that they be given the opportunity to amend their complaint if either of Defendant's motions were granted in whole or in part.  Federal Rule of Civil Procedure 15(a) requires this Court to "freely give leave when justice so requires."  Although leave to amend should be freely given, it need not be given in cases where amendment would be futile.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  Here, this Court has only foreclosed Plaintiffs from pursuing a breach of contract claim under the theory that a unilateral refund by AGLIC may have amounted to breach.  Considering this ruling, amendment would be

futile, as the clear text of the Policy shows this would not be a breach.  Therefore, this Court will deny Plaintiffs' request for leave to amend.

## CONCLUSION

For the reasons set forth in this Opinion, this Court will deny, in part, and grant, in part, Defendant's motion to dismiss.  This Court will also deny Defendant's motion to strike class allegations, without prejudice.

An appropriate Order will be entered.


Date: October 31, 2018                   s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.